2002 UT App 64

**Connie ALBRECHT, individually, and on behalf of those similarly situated, Plaintiff and Appellant,**

v.

**Wallace R. BENNETT and David D. Bennett, Defendants and Appellees.**

**No. 20000714–CA.**

Court of Appeals of Utah.

March 7, 2002.

Phillip B. Shell, Day Shell & Liljenquist, Murray, for Appellant.

Daniel G. Moquin, South Salt Lake City, for Appellee Wallace Bennett.

Matthew G. Cooper and Mel S. Martin, Mel S. Martin PC, Murray, for Appellee David Bennett.

Before BILLINGS, Associate P.J., and BENCH, and THORNE, JJ.

## AMENDED OPINION [1]

THORNE, Judge:

¶1 Appellant Connie Albrecht (Albrecht) appeals from an order dismissing her complaint against Appellees Wallace Bennett and David Bennett (the Bennetts), and suppressing the changes to her deposition testimony. We affirm.

## BACKGROUND

¶2 Robert J. DeBry and Associates (the DeBry law firm) filed a complaint against the Bennetts in Third District Court on behalf of Albrecht.[2] The complaint alleged, among other things, fraud, interference, breach of contract, and negligence. The complaint stemmed from a pleading filed by the Bennetts in federal court after Robert DeBry (DeBry) allegedly terminated them as "associated counsel" from a class action lawsuit. The federal case concerned breast implant litigation, wherein Albrecht was a class member. In that litigation, the DeBry law firm represented Albrecht and other members of the purported class.

### 1. Breast Implant Litigation Team

¶3 On February 18, 1992, the DeBry law firm, the Bennetts, and three others entered into an agreement, wherein the Bennetts and the others agreed to serve as "associated counsel" in the case of *Jane Doe v. Dow Corning.* According to the agreement, the

---

1. This Amended Opinion replaces the Opinion in Case No. 20000714–CA issued on December 13, 2001.

2. The Bennetts would later file a motion to dismiss based in part on Albrecht's alleged failure to name the real party in interest, which the Bennetts claimed was actually the DeBry law firm.

Bennetts and the others would "appear in the case as counsel of record, [and] . . . consult or assist from time to time." The DeBry law firm was to serve as lead counsel for the "breast implant litigation team" or "BI team" as they came to call it.

¶ 4 On June 2, 1999, Robert DeBry notified David Bennett, via letter, that he was "out of ideas and out of energy for [the BI team's] nationwide and statewide breast implant litigation." DeBry then informed David Bennett that "I think it is time to formally disband our BI team."

¶ 5 On June 5, 1999, David Bennett responded to DeBry's suggestion to disband the BI team. Bennett informed DeBry that he thought it was "premature to 'disband our BI team.'" Bennett indicated that, per a previous DeBry letter, the BI team had 100 clients with Dow Corning implants. Further, Bennett explained that he believed that the BI team had agreed to represent both individual cases and the class "from the outset of the litigation." Bennett closed the letter by stating that "the BI [t]eam [should] not disband until such time as all women with claims the BI [t]eam has sought to represent have left bankruptcy proceedings, settled or concluded by trial or appeal."

¶ 6 On June 18, 1999, DeBry informed the BI team members that he still intended to disband the team. Further, with regard to the individual cases, DeBry informed the team members that "[s]o far as I recall, our BI team only worked on the class action aspect of the case." Finally, DeBry addressed the BI team's obligations to "the client and court," stating:

Actually, the Contingent Fee Agreement is with the DeBry law firm—not you. We have brought [the BI team] on board to assist on certain technical issues, and we no longer need that assistance. It is that simple. I do recognize that you have some obligation to the court, but your only obligation is simply to file a Notice of Withdrawal.

¶ 7 The letter writing continued between DeBry and the BI team members through June 29, 1999, when DeBry informed the members that he was submitting the "dispute" to the American Arbitration Associa-

tion. Then, on July 30, 1999, DeBry, by letter, informed Wallace Bennett that he was "surprised" to receive a pleading titled Motion by Co–Counsel of Record Respecting Plaintiff's Final Report of Settlement filed by the Bennetts in the *Connie Albrecht v. McGhan* federal case. In that letter, DeBry stated:

I call to your attention the fact that you have no contract with Connie Albrecht (or any of the other plaintiffs for that matter). Indeed, I don't think you have ever even met Connie Albrecht. I do have a direct written contract with Connie Albrecht (as well as the other clients). Your involvement was as an associated counsel which I elected to do at my discretion, a discretion derived from the agreement with my client. My authority also allows termination of such relationships. Exercising that implied authority, both you and David [Bennett] have been terminated.

### 2. The Ensuing Litigation in Third District Court

¶ 8 The DeBry law firm, on behalf of Albrecht, filed a complaint against the Bennetts in Third District Court. The complaint alleged that the Bennetts had filed their motion in federal court after DeBry had terminated them, and that the filing either delayed or interfered with Albrecht's settlement. The Bennetts responded with a motion to dismiss, alleging that the DeBry law firm was the real party in interest to the complaint. The Bennetts also filed a motion to disqualify DeBry from representing Albrecht in the case. The trial court denied the Bennetts' Motion to Dismiss, but granted their Motion to Disqualify. Subsequently, Phillip Shell represented Albrecht in the matter.

¶ 9 On April 6, 2000, Albrecht filed a motion to dismiss her claims against the Bennetts, but the motion did not specify whether Albrecht sought a dismissal without prejudice. On April 7, 2000, David Bennett deposed Albrecht. During that deposition, Bennett repeatedly questioned Albrecht regarding her complaint. Throughout the deposition, Albrecht denied authorizing the DeBry law firm to file the complaint. Albrecht

also denied that the Bennetts' actions affected her settlement.

¶ 10 On April 12, 2000, the Bennetts filed a motion for summary judgment. In that motion, the basis for which was Albrecht's deposition testimony, the Bennetts argued that Albrecht "was unaware she had been a named plaintiff in this case[;] ... that she had suffered no damages at the hands of the Bennetts; and, that she had no interest in pursuing a case against the Bennetts." Thereafter, Albrecht altered her deposition testimony, making nearly forty changes to her testimony, by using the errata sheets provided to her after the preparation of the deposition transcript. In the errata sheets, Albrecht asserted that she had, in fact, given the DeBry law firm authorization to file the complaint against the Bennetts and she retracted her statements that her settlement had not been affected by the Bennetts' motion.

¶ 11 Examples of Albrecht's changes to her testimony are:[3]

Q: Did you authorize Mr. DeBry's office to file a lawsuit against the Bennetts?

A: No, it was not. It was that they, had confronted me if I would be—if they needed me, is my understanding, would I be kind of a witness for them in their behalf, but as far as my name being a plaintiff, I about fell through the floor when I seen [sic] it.

Amended Answer: I authorized Mr. DeBry's office to represent me and take care of whatever needed to be done regarding the Bennetts due to legal actions they took on July 22, 1999 in connection with my implant case, although I did not know all the details.

Q: You [Albrecht] did not give approval for that, did you?

A: Not to—no, to be a plaintiff, no I did not.

Amended Answer: I wasn't aware of what legal actions Mr. DeBry's office was going to take, but in August of 1999, I authorized any legal action they felt necessary.

Q: Thank you. Did they [the DeBry law firm] ever tell you that your settlement with the breast implant cases was being compromised by the Bennetts.

A: No.

Amended Answer: Yes. I understood back then that their actions could delay or hurt my case. That's why I authorized Mr. DeBry's firm to represent me against the Bennetts.

Q: Would it be a fair statement to say it [the complaint] was filed without your knowledge and permission?

A: Yes.

Amended Answer: Answer should be no in that I did authorize my attorneys to act in this matter, although I didn't understand the technicalities.

Q: Did you ever give permission for [the complaint] to be filed?

A: I knew nothing about it.

Amended Answer: I didn't authorize it, but I don't understand it. I relied on my attorneys.

Q: Was your settlement delayed by the Bennetts?

A: No.

Amended Answer: Answer should be it was delayed but my attorney knows more about the details.

¶ 12 In response to Albrecht's changes to her testimony, the Bennetts moved to strike or suppress those changes. The Bennetts also responded to Albrecht's Motion to Dismiss, arguing that the court should dismiss the complaint with prejudice. On July 17, 2000, the trial court entered an order dismissing Albrecht's complaint with prejudice and disallowing Albrecht's changes to her deposition testimony. This appeal followed.

ISSUES AND STANDARDS OF REVIEW

■ ¶ 13 Albrecht argues the trial court erred by suppressing the changes to her deposition testimony. We review a trial court's legal conclusions granting a motion to suppress for correctness. *See State v. Swink*, 2000 UT App 262, ¶ 6, 11 P.3d 299.

---

3. These passages are taken from the parties' briefs.

¶ 14 Albrecht also argues the trial court erred by granting her Motion to Dismiss her complaint against the Bennetts with prejudice.[4] We review a trial court's decision to dismiss a claim with prejudice for an abuse of discretion. *See Murray First Thrift & Loan v. Benson,* 563 P.2d 185, 186 (Utah 1977) (affirming trial court's decision to dismiss claims in a third-party complaint with prejudice, although third-party plaintiff sought dismissal of claims without prejudice).

## ANALYSIS

### I. The Bennetts' Motion to Suppress

¶ 15 Albrecht argues the trial court erred by granting the Bennetts' Motion to Suppress the changes to her deposition testimony. Initially, we note that neither Albrecht nor the Bennetts have included copies of either the relevant portions of Albrecht's testimony or Albrecht's errata sheets. Further, the transcript from Albrecht's deposition, containing her original answers, is absent from the record. Accordingly, "because the entire record in this case is not before this court, we presume the trial court's findings are supported by competent and sufficient evidence, 'however, ... the findings must themselves be sufficient to provide a sound foundation for the judgment.'" *Sampson v. Richins,* 770 P.2d 998, 1002 (Utah Ct.App.1989) (citation omitted).

#### A. Rule 30(e) of the Utah Rules of Civil Procedure

¶ 16 Albrecht contends that Rule 30(e) of the Utah Rules of Civil Procedure neither limits nor imposes restrictions on what changes in "form or substance" a deponent may make to her deposition testimony. Utah R. Civ. P. 30(e). In pertinent part, Rule 30(e) states:

> [T]he deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and

the reasons given by deponent for making them.
*Id.*

¶ 17 In *Gaw v. State,* 798 P.2d 1130 (Utah Ct.App.1990), we addressed, in some detail, the workings of Rule 30(e). *See id.* at 1138–40. We explained that although courts have "allowed liberal changing of deposition testimony, they have been fairly strict in requiring compliance with the technical requirements of Rule 30(e)." *Id.* at 1139. Drawing primarily from federal case law, we articulated three factors a trial court should consider when deciding whether to strike or suppress subsequent changes to deposition testimony.

¶ 18 These factors are: (1) were the changes so extensive that it was " 'virtually impossible for the court reporter to enter the changes upon the deposition as he is required to do' "? *Id.* at 1139 (quoting *Barlow v. Esselte Pendaflex Corp.,* 111 F.R.D. 404, 406 (M.D.N.C.1986)) (stating that deponent's more than one hundred changes to her deposition testimony were "at variance with the letter and spirit of Rule 30(e)"); (2) Did the deponent offer to reopen the deposition examination at the deponent's expense? *See id.* (citing *Sanford v. CBS, Inc.,* 594 F.Supp. 713, 715 (N.D.Ill.1984) (mem.); *Lugtig v. Thomas,* 89 F.R.D. 639, 642 (N.D.Ill.1981) (mem.)); and (3) Did the deponent comply with the technical requirements of Rule 30(e), i.e., did the deponent give specific reasons for each change? *See id.*

##### 1. Number of Changes to Albrecht's Testimony

¶ 19 The trial court concluded that Albrecht attempted to make "wholesale alteration of [her] sworn testimony." As we have stated above, the parties in this matter have failed to provide either a copy of the relevant portions of the deposition transcript or copies of the errata sheets in the addenda to their briefs. Further, neither party has informed this court how many changes Albrecht made to her testimony. Only after reviewing the record, were we able to locate copies of the errata sheets.

---

4. We note that Albrecht's motion seeking dismissal did not specify whether the trial court should dismiss her complaint with or without prejudice. During oral argument on the motion, Albrecht's counsel indicated that she desired the complaint be dismissed without prejudice.

¶ 20 The errata sheets show that Albrecht made nearly forty changes to her testimony. Many of these changes were substantive, changing "yes" to "no" and vice versa. Several of these changes went from single word answers to more detailed answers. We are confident that many of these answers would likely have prompted additional examination. Although the number of changes Albrecht made to her testimony and the substantive nature of those changes are not dispositive on the issue of whether the trial court abused its discretion by striking the changes, they are relevant when considering the factors suggested in *Gaw* as a whole.

### 2. Albrecht's Offer to Reopen the Deposition

¶ 21 Albrecht concedes that the corrections to her deposition testimony were "substantive." For example, during the deposition, Albrecht repeatedly denied authorizing the DeBry law firm to file the complaint against the Bennetts on her behalf. Albrecht would later recant her testimony, by way of the errata sheets, indicating that she did have knowledge of the complaint and did give the DeBry law firm the authority to file it.

¶ 22 It is clear that Albrecht's subsequent changes would impair the usefulness of the deposition. Albrecht claims that she offered to reopen the deposition at her own expense. We find Albrecht's claim disingenuous.

¶ 23 In *McHugh v. Kilp,* No. CA–99–875, 2001 WL 303063 at *4, 2001 Mass.Super. LEXIS 107, at **10–12 (Mass.Super.Mar.22, 2001), the court explained the necessity of reopening a deposition when a deponent substantively changes her testimony through the use of errata sheets.

> The Plaintiffs' errata sheets have changes in substance to their respective depositions ..., as they add to the detail of; contradict; or make original answers of each deposition incomplete without further testimony. Several changes made by [Plaintiff] during her deposition have been changed from "no" to "yes" or vice versa. Changes such as these may alter the direction and nature of the inquiries of the examining attorney and therefore have effect on the scope, nature, and opportunity to cross-examine. Also, some of the substantial additions to the original answers appearing in the Plaintiffs' deposition errata sheets may warrant further inquiry into other discoverable matters.

*Id.* (internal quotations and citations omitted).

¶ 24 Here, Albrecht contends that she offered to reopen the deposition at her expense. On May 3, 2000, after they had filed a motion for summary judgment based upon Albrecht's deposition, the Bennetts filed a notice of deposition, seeking to depose Albrecht for a second time.

¶ 25 On May 24, 2000, Albrecht's counsel sought a protective order to prevent the Bennetts from reopening the deposition, notwithstanding Albrecht's claim that she offered to reopen the deposition. In her motion, Albrecht argued that a second deposition "should not be taken or should be postponed until after a determination by the [trial court] is made on [Albrecht's] pending Motion to Dismiss."

¶ 26 Suffice it to say, Albrecht was content to allow her changes to stand without reopening the deposition, or, at a minimum, content to allow the trial court to rule on her Motion to Dismiss without allowing the Bennetts the opportunity to scrutinize the changes to her testimony in a second deposition. Accordingly, we view Albrecht's offer as disingenuous, and therefore, we conclude that Albrecht made no real offer to reopen the deposition at her expense.

### 3. Albrecht's Reasons for the Changes to Her Testimony

¶ 27 On the first page of Albrecht's errata sheets, she states the following:

> The changes on the following 4 pages are made because [sic] due to nervousness, confusion, and lackof [sic] memory, I didn't answer a lot of the questions correctly at my deposition. I have since reviewed documents and letters previously provided by my attorney and that has helped me make these changes and corrections.

These are the sum reasons for Albrecht's nearly forty changes to her testimony.[5]

¶ 28 As we stated in *Gaw*, courts have been "fairly strict in requiring compliance with the technical requirements of Rule 30(e)." 798 P.2d at 1139. We find no reason to deviate from that position. Rule 30(e) requires the deponent to "sign a statement reciting such changes and the reasons given by the deponent for making them." Utah R. Civ. P 30(e). Here, Albrecht provided a laundry list of general conclusory reasons for her four pages of changes. We conclude that Albrecht's "general conclusory reasons given for all the changes ... are not sufficient; after each change, the deponent must state the specific reason for that particular change." *Lugtig*, 89 F.R.D. at 641.

¶ 29 Finally, we agree with the court in *Greenway v. International Paper*, 144 F.R.D. 322 (W.D.La.1992), that Rule 30

> cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all and then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Id.* at 325; *see also Rios v. Bigler*, 847 F.Supp. 1538, 1546 (D.Kan.1994) (stating "[a]lthough the errata sheet ... may be used to correct errors or to clarify or change an answer when a question is misunderstood, it may not be used to allow a person to alter what has been said under oath").

¶ 30 We conclude that Albrecht did not satisfy the factors set forth in *Gaw*, and therefore, the trial court did not exceed its discretion by suppressing Albrecht's changes. Accordingly, we affirm the trial court's decision granting the Bennetts' Motion to Suppress.

---

**5.** Moreover, we note that the trial court found Albrecht's reasons for her changes lacked credibility.

## II. Albrecht's Motion to Dismiss

¶ 31 Albrecht argues the trial court erred by dismissing her complaint with prejudice. Rule 41(a)(1) of the Utah Rules of Civil Procedure allows plaintiffs to seek a voluntary dismissal of their complaint without prejudice. *See* Utah R. Civ. P. 41(a)(1). However, we need not reach the merits of Albrecht's claim because any error on the part of the trial court in dismissing Albrecht's complaint with prejudice was harmless error.

¶ 32 We conclude that given the trial court's decision to suppress Albrecht's deposition changes and our decision affirming that ruling, the trial court would have undoubtedly granted the Bennetts' summary judgment motion, and therefore, effectively dismissed Albrecht's complaint as a matter of law. Accordingly, any error on the part of the trial court was harmless error.

## CONCLUSION

¶ 33 We affirm the trial court's ruling to suppress Albrecht's changes to her deposition testimony. Further, any error on the part of the trial court in dismissing Albrecht's complaint with prejudice, if one exists, was harmless error that would not have changed the ultimate outcome.

¶ 34 The judgment of the trial court is therefore affirmed.

¶ 35 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.