2002 UT App 268

**STATE of Utah, in the interest of J.B., a person under eighteen years of age.**

**R.B., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20010187–CA.**

Court of Appeals of Utah.

Aug. 8, 2002.

Francis A. Angley, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, Carol L. Verdoia, and John M. Peterson, Assistant Attorneys General, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before Judges BILLINGS, DAVIS, and GREENWOOD.

## OPINION

DAVIS, Judge:

¶ 1 Appellant R.B. (Father) challenges the juvenile court's order terminating his parental rights to J.B. on the basis that he was not afforded due process. We affirm.

### BACKGROUND [1]

¶ 2 Father is the natural father of six children. The two oldest children, G.B. and C.B., are in long-term foster care. Father's voluntarily relinquishment of his parental rights to the three younger children, L.B., E.S.B., and B.B., became effective on October 23, 2000. On August 20, 2000, J.B., the sixth child, was born and Father, along with the mother, concealed the birth by, among other things, obtaining a false birth certificate naming Father's friend as J.B.'s father.

¶ 3 DCFS was notified regarding the birth of J.B. and began an investigation. DCFS was told that J.B. was the child of a friend and that the mother would babysit the child while the friend was at work. The false birth certificate was presented to the DCFS caseworker to validate this story. DCFS visited with the friend who subsequently confessed to the deception. J.B. was removed from the parental home on or about October 17, 2000, as a child at risk under Utah Code

---

1. This family has an extensive history with the Division of Child and Family Services (DCFS). For a full recitation of the background and facts refer to the companion case, *In re J.B.*, 2002 UT App 267.

Ann. § 78–3a–103(1)(r)(i)(E) (Supp.2001).[2] At a shelter hearing held on October 30, 2000, the juvenile court granted temporary custody and guardianship of the child to DCFS.

¶ 4 On November 13, 2000, the State filed its termination petition and a trial on the petition was held on January 25, 2001. The State moved the court to take judicial notice of the prior proceedings involving the older children which included, among other things, two adjudication orders. These orders detailed a twelve year period in which DCFS received approximately eighteen referrals for child abuse and neglect by the parents, at least ten of which were substantiated on grounds of sexual abuse, physical abuse, physical neglect, failure to protect, emotional maltreatment, and medical neglect. The court heard argument on, and granted, the State's motion to take judicial notice of the first termination findings over Father's objection. The juvenile court thus took judicial notice of all prior proceedings, including the termination proceeding in which Father did not participate.

¶ 5 Father, the mother, their friend B.R., who assisted in concealing the birth and identity of J.B., and three DCFS caseworkers testified at the trial regarding J.B. Based on that testimony and the historical facts surrounding the parents' abuse and neglect of their older children, the juvenile court terminated Father's and the mother's parental rights to J.B. pursuant to Utah Code Ann. § 78–3a–407 (Supp.2001) finding parental unfitness, failure to remedy circumstances causing out-of-home placement, token efforts, and best interest of the child.

¶ 6 Specifically, the court found that the parents did nothing to resolve their issues, modify their behavior, or correct the circumstances that caused them to lose custody of their five older children. The court further found that because J.B.'s siblings had been abused and neglected by his parents, he was at risk for abuse and neglect. Finally, the court found that J.B. was in an adoptive home where he was thriving and had bonded

to his foster parents who desired to adopt him.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Father argues that his parental rights were terminated in violation of due process of law in that he was denied the opportunity to confront his accusers, cross-examine witnesses, or present rebuttal testimony and evidence. Specifically, Father argues that in the proceeding involving the termination of his parental rights to J.B., it was error for the juvenile court to take judicial notice of and to use findings from termination proceedings involving the mother and L.B., E.S.B., and B.B. Having relinquished his parental rights to these children, Father was not a participant in that termination trial. Whether a parent has been afforded adequate due process is a question of law, reviewed for correctness. *See In re S.A.,* 2001 UT App 307, ¶ 8, 37 P.3d 1166.

## ANALYSIS

¶ 8 Father, having relinquished his parental rights to his older children, did not participate in the proceedings to terminate the mother's parental rights to those children. As the State conceded during oral argument on this matter, to the extent that the findings from the first termination trial were used against Father in this termination trial, the juvenile court erred. "Article I, Section 7 of the Utah Constitution guarantees an accused the right to due process of law. Due process includes, among other things, the opportunity to submit evidence, examine and cross-examine witnesses." *State v. Cramer,* 2002 UT 9, ¶ 19, 44 P.3d 690 (quotations and citation omitted). The juvenile court's reliance upon the findings and order from the prior termination trial in which Father, due to his voluntary relinquishment did not participate, was improper because Father "could not participate in the proceedings that led to that determination." *S.A.,* 2001 UT App 307 at ¶ 17, 37 P.3d 1166. This error amounted to a denial of Father's constitutional right to confrontation, and therefore, due process.

2. For convenience, we cite to the most recent version of the statute. There has been no signifi-

cant change to the statute that would affect our analysis.

¶ 9 The appellate court will only find prejudicial error after a review of the record demonstrates that "there was a reasonable likelihood of a more favorable result for the [appellant]." *In re C.Y.*, 765 P.2d 251, 254 (Utah Ct.App.1988) (quotations, citation, and emphasis omitted). "[W]e must review the record and determine whether there is a reasonable likelihood that the outcome of the termination hearing would have been more favorable to [Father] had the juvenile court not taken judicial notice of the [prior termination order]." *Id.*

¶ 10 The question thus becomes whether the juvenile court's termination order is supported by the previously adjudicated facts involving J.B.'s older siblings from proceedings in which Father participated, together with the evidence and findings from the J.B. termination proceeding, without relying on any findings from the proceeding in which Father did not participate. Under Rule 201 of the Utah Rules of Evidence, judicially noticed facts are conclusively established in civil actions for purposes of the fact finding process and a "party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Utah R. Evid. 201(e). In addition, "[c]onsiderations regarding a child's welfare are rarely, if ever, static. In fact, it is more likely that the child's environment is constantly evolving, thus justifying the court's continuing jurisdiction." *In re J.J.T.*, 877 P.2d 161, 163 (Utah Ct.App.1994); *see also In re A.S.*, 12 Kan.App.2d 594, 752 P.2d 705, 711 (1988) (holding that court must be free to examine all circumstances, evidence, prior facts and orders, and other relevant information in termination proceedings).

¶ 11 In this case, the juvenile court granted the State's motion to take judicial notice of all prior proceedings. Exclusive of the prior termination proceeding, the juvenile court took judicial notice of proceedings, tracing its extensive history involving this family which included two previous adjudica-

tion orders entered by the court in which Father fully participated. Among other things, those orders included findings of neglect as to the older children.

¶ 12 Utah Code Ann. § 78–3a–407 states that parental rights may be terminated if the juvenile court finds "that the parent or parents have neglected or abused the child." Utah Code Ann. § 78–3a–407(2). A neglected child is defined as a minor "who is at risk of being a neglected or abused child ... because another minor in the same home is a neglected or abused child." Utah Code Ann. § 78–3a–103(1)(r)(i)(E). Based on the prior adjudicated facts that J.B.'s older siblings were neglected, resulting from proceedings in which Father fully participated, together with evidence taken in this proceeding, and applying the plain meaning of both sections of the Utah Code, we hold that it was proper for the juvenile court to find that J.B. was a neglected child.

## CONCLUSION

¶ 13 Even without considering the findings from the first termination trial in which Father did not participate and was not a party, the findings entered in prior adjudication proceedings in which Father participated, together with evidence presented at this termination trial, were sufficient to support the juvenile court's termination of Father's parental rights. Therefore, the juvenile court's order terminating Father's parental rights to J.B. is affirmed.

¶ 14 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.