208 P.3d 1058 (2009)
2009 UT App 118
In the interest of A.M. and C.M., persons under eighteen years of age.
D.M., Appellant,
v.
S.H., Appellee.
No. 20080411-CA.
Court of Appeals of Utah.
April 30, 2009.
*1060 David O. Drake, Midvale, for Appellant.
Kim M. Luhn, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges GREENWOOD, THORNE, and McHUGH.

OPINION
McHUGH, Judge:
¶ 1 D.M. (Father) challenges the termination of his parental rights in C.M. and A.M. (the Children). Father first argues that the juvenile court lacked subject matter jurisdiction to consider S.H.'s (Mother) petition. In addition, Father asserts a number of issues, challenging the juvenile court's order on constitutional, evidentiary, and procedural grounds. We affirm.

BACKGROUND
¶ 2 Father and Mother have two children: C.M., who was born in 1996, and A.M., who was born in 1997. In 2001, a Utah court entered a decree of divorce ending Father and Mother's marriage and awarding physical custody of the Children to Mother, subject to Father's right to exercise parent-time. At the time of the divorce, Father, Mother, and the Children lived in Utah. Father exercised parent-time until the fall of 2004, when he twice attempted to have Mother killed by two different hired assassins. Following the murder attempts, Mother obtained a protective order prohibiting Father from having contact with her or the Children. In late 2004, she and the Children moved to another state.
¶ 3 On December 15, 2005, Father was convicted on two counts of conspiracy to commit aggravated murder of Mother. One conviction was later vacated, but Father received an indeterminate sentence of five years to life in prison with a recommended minimum sentence of ten years on the remaining conviction. Father is currently incarcerated at the Utah State Prison and has appealed his conviction. That appeal has not yet been resolved.
¶ 4 Mother filed a Petition for Termination of Parental Rights in the Utah Third District Juvenile Court on May 3, 2006. Mother cited Father's conviction as the grounds for termination. She simultaneously filed a motion to conceal her current address, which the court granted. In April 2007, a Guardian Ad Litem (the GAL) was appointed to represent the best interests of the Children. Mother subsequently amended her Petition for Termination of Parental Rights to add abandonment as an alternative ground for termination.
¶ 5 Following trial on January 7 and 8, 2008, the juvenile court terminated Father's parental rights. The grounds for termination were parental unfitness and abandonment, both based upon "the conduct of [Father] leading to his conviction for Conspiracy to Commit Aggravated Murder of [Mother]."

ISSUES AND STANDARDS OF REVIEW
¶ 6 Father argues that the Utah juvenile court lacked subject matter jurisdiction over the termination proceedings because Mother failed to list her address in the petition for termination and because the Children no longer live in Utah. Jurisdictional questions are questions of law, which we review for correctness. See In re P.F.B., 2008 UT App 271, ¶ 10, 191 P.3d 49. In addition, "[t]he proper interpretation and application of a statute is a question of law which we review for correctness. ..." Gutierrez v. Medley, 972 P.2d 913, 914-15 (Utah 1998).
¶ 7 Father also complains that the juvenile court erred in quashing his subpoenas for Mother's medical records and in issuing a protective order. Generally, we review a trial court's discovery rulings for an abuse of discretion. See Pete v. Youngblood, 2006 UT App 303, ¶ 7, 141 P.3d 629.
*1061 ¶ 8 Father's next challenge is to the juvenile court's evidentiary rulings at trial. "[W]e will not reverse the [juvenile] court's ruling[s] on evidentiary issues unless it is manifest that the [juvenile] court so abused its discretion that there is a likelihood that an injustice resulted." In re G.C., 2008 UT App 270, ¶ 9, 191 P.3d 55 (internal quotation marks omitted). We review questions of statutory interpretation, on the other hand, for correctness. See Li v. Zhang, 2005 UT App 246, ¶ 6, 120 P.3d 30, aff'd sub nom. Li v. Enterprise Rent-A-Car Co., 2006 UT 80, 150 P.3d 471.
¶ 9 Father contends that the juvenile court erred in denying his motion for the appointment of a mental health therapist to evaluate Mother. See generally Utah R. Juv. P. 33(a)(2). We review an interpretation of a rule of procedure for correctness. See Ostler v. Buhler, 1999 UT 99, ¶ 5, 989 P.2d 1073.
¶ 10 Father also claims that he was denied due process when the juvenile court concealed Mother's address and sustained objections to questions relating to Mother's fitness and the Children's current location. "Whether a parent has been afforded adequate due process is a question of law, reviewed for correctness." In re J.B., 2002 UT App 268, ¶ 7, 53 P.3d 968.
¶ 11 Finally, Father challenges the sufficiency of the evidence to support the finding that termination of his parental rights was in the Children's best interests. "Because of the factually intense nature of such an inquiry," In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435, we will disturb the juvenile court's decision to terminate parental rights only if the decision is "against the clear weight of the evidence or ... a mistake has been made," id. (internal quotation marks omitted). Accordingly, "we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination...." In re V.T., 2000 UT App 189, ¶ 8, 5 P.3d 1234.

ANALYSIS

I. Subject Matter Jurisdiction
¶ 12 In 2000, Utah adopted the Uniform Child Custody and Jurisdiction Enforcement Act (the UCCJEA). See Utah Code Ann. § 78-45c-101 (2000) (current version as amended at Utah Code Ann. § 78B-13-101 (2008)).[1] Under the Utah UCCJEA, the court that entered the initial custody determination retains subject matter jurisdiction over future child custody determinations[2] until
(a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(b) a court of this state or a court of another state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in this state.

Id. § 78B-13-202(1) (2008) (emphases added).
¶ 13 In this case, a Utah trial court entered the initial custody and parent-time determination as part of the divorce proceedings. Neither party alleges that Utah did not have subject matter jurisdiction at the time of that initial decree. Father, however, claims that Utah's jurisdiction has lapsed in favor of the state where the Children now live. In response, Mother and the GAL argue that Utah's jurisdiction continues because Father still resides in Utah. A challenge *1062 to jurisdiction is a threshold question that we must resolve before addressing the substantive issues on appeal. See In re K.F., 2009 UT 4, ¶ 21, 201 P.3d 985.

A. Utah's Initial Subject Matter Jurisdiction Continues Until a Court Determines that Either of Two Conditions Have Occurred.
¶ 14 Section 78B-13-202(1) contains two subparts separated by the disjunctive "or." See Utah Code Ann. § 78B-13-202(1). Consequently, its plain language provides that the initial state retains jurisdiction unless it determines that the provisions of subsection (a) have been met or the initial state or any other state determines that the provision of subsection (b) has been met. See id.; cf. Calhoun v. State Farm Mut. Auto. Ins. Co., 2004 UT 56, ¶ 20, 96 P.3d 916 (holding that the legislature's use of "the disjunctive `or,' as opposed to the conjunction `and,' clearly mandates that a policy need only provide owner's coverage or operator's coverage not both"). See generally In re Forlenza, 140 S.W.3d 373, 376 (Tex.2004) (interpreting "or" in nearly identical language of Texas's version of the UCCJEA to create two factors that independently can terminate jurisdiction). Therefore, while we agree with Mother and the GAL that subsection (b) cannot divest Utah of jurisdiction because of Father's status as a Utah resident, this fact does not end our analysis.[3] Rather, we must also consider the effect of subsection (a) on the jurisdictional question.

B. The Juvenile Court Did Not Exceed its Discretion in Concluding that Substantial Evidence Remains in Utah.
¶ 15 Section 78B-13-202(1)(a) contains two factors separated by the conjunction "and." See Utah Code Ann. § 78B-13-202(1)(a). Thus, for Utah to be divested of jurisdiction under subsection (1)(a), a Utah court must determine that "neither the child[ren], the child[ren] and one parent, nor the child[ren] and a person acting as a parent [continue to] have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child[ren]'s care, protection, training, and personal relationships." Id. (emphasis added). If a Utah court determines that both of the factors set forth in subsection (1)(a) have transpired, it no longer has subject matter jurisdiction. See id.; see also Forlenza, 140 S.W.3d at 378-79 (interpreting Texas's UCCJEA's corollary to Utah's section 78B-13-202(1)(a) and upholding the trial court's conclusion that a significant connection between the children and the state of Texas still existed despite the relocation of the children and the custodial parent).
¶ 16 Father argues that the Children left Utah approximately a year and a half before Mother filed her petition and have not visited with him or his family since before the murder attempts. Thus, Father contends that information about the Children's "care, protection, training, and personal relationships," Utah Code Ann. § 78B-13-202(1)(a), is no longer available in Utah and that this state no longer retains subject matter jurisdiction over these proceedings. We are not convinced.
¶ 17 The record reflects that the Children's maternal grandparents live in Utah and that the Children have visited with them since their relocation.[4] Furthermore, the facts related to Father's two attempts to have Mother killed are relevant to the "care" and "protection" *1063 of the Children as well as to their "personal relationships" with Father. There is also evidence in Utah relating to the effect of Father's attempts to have Mother killed on the Children's personal relationships with their paternal grandparents. While evidence on the relevant issues may also be available in another state, the UCCJEA presumes that jurisdiction will continue in Utah until "substantial evidence is no longer available in this state." Utah Code Ann. § 78B-13-202(1)(a) (2008). We hold that the undisputed record reflects that substantial evidence remains in Utah on the relevant issues and therefore supports the juvenile court's conclusion that Utah retains subject matter jurisdiction over Mother's petition.[5]

II. Order Quashing Subpoenas and Granting Protective Order
¶ 18 Having concluded that the juvenile court had subject matter jurisdiction, we now consider the issues on appeal. Father contests, on both procedural and substantive grounds, the juvenile court's order quashing his subpoenas for Mother's health records and its order granting Mother a protective order. He first contends that the juvenile court granted Mother's motion before Father's opportunity to respond had expired and without submission of the motion for decision as required under rules 6 and 7 of the Utah Rules of Civil Procedure, see Utah R. Civ. P. 6, 7.[6] Father also argues that the juvenile court erred in concluding that the information sought by Father was irrelevant.

A. We Assume Father Was Entitled to Additional Time to Oppose Mother's Motions.
¶ 19 Rule 7 of the Utah Rules of Civil Procedure allows the nonmoving party to file a memorandum in opposition within ten days of service of the original motion and memorandum. See id. R. 7(c)(1). Rule 6 further provides that when the period for response is less than eleven days, intermediate Saturdays, Sundays, and holidays are excluded. See id. R. 6(a). Three additional days are added to the response period when service is by mail. See id. R. 6(e). Following briefing, either party may file a request to submit for decision. See id. R. 7(d). "If no party files a request, the motion will not be submitted for decision." Id.
¶ 20 Mother served Father with her motions to quash the subpoenas and issue a protective order and the supporting memorandum via mail on October 29, 2007. Without receiving a response from Father or a request to submit for decision from either party, the juvenile court granted those motions on November 13, 2007. Father contends that under the guidelines of rule 6, he had until November 15, 2007, to file a response. Further, Father asserts that the motions were never submitted for decision. Consequently, he claims, the court erred in issuing the order quashing the subpoenas and entering a protective order. We assume for purposes of this analysis that Father should have been afforded additional time to oppose Mother's motions.

B. Any Error in Calculating the Time to Oppose the Motions Was Harmless.
¶ 21 Even if Father had additional time under the rules to respond, we nevertheless uphold the juvenile court's order because the error was harmless. "[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings." H.U.F. v. W.P.W., 2009 UT 10, ¶ 44, 203 P.3d 943 (alteration in original) (internal quotation marks omitted). The juvenile court quashed the subpoenas and *1064 granted a protective order because Father sought discovery of Mother's medical records, which the court concluded were irrelevant to the issues before it.[7]
¶ 22 "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." In re R.A.J., 1999 UT App 329, ¶ 7, 991 P.2d 1118 (interpreting the predecessor to the current termination statute, which contained the same language); see also Utah Code Ann. §§ 78A-6-503(2), -506(3) (2008) (current version). First, the court must find the parent "to be unfit or incompetent based upon any of the grounds for termination described in [the Termination of Parental Rights Act]." Utah Code Ann. § 78A-6-506(3). Second, if such a determination is made, "the court shall consider the welfare and best interests of the child," id., to decide whether termination of the parental rights will serve those interests. See R.A.J., 1999 UT App 329, ¶ 7, 991 P.2d 1118.
¶ 23 Father asserts that when the legislature bifurcated the termination process, it intended that juvenile courts consider the best interests of the Children in general, not just in relation to the parent whose rights are subject to termination. Father, however, cites no authority to support his position, and we decline to adopt it. In the absence of an actual challenge to her fitness, Mother has a protected right to parent the Children. See generally Utah Code Ann. § 62A-4a-201(1)(b)-(c) (Supp.2008) (acknowledging a parent's constitutional right to raise his or her children absent any finding of unfitness and stating it is in children's best interests to be raised by a natural parent); Utah Code Ann. § 78A-6-504 (requiring a petition to initiate termination of parental rights). We therefore conclude that the best interests prong of the termination statute does not anticipate an evaluation of a parent whose fitness has not been challenged by a cross-petition to terminate parental rights. Under these circumstances, the juvenile court properly granted the protective order and quashed the subpoenas.[8]

III. Appointment of a Mental Health Therapist
¶ 24 Father challenges the denial of his request for the appointment of a mental health therapist to evaluate Mother. Father claims that the Utah Rules of Juvenile Procedure permit such an appointment in rule 33, which states,
The court may order [an examination by a mental health therapist] of the minor's parent ... who is a party to the proceedings and whose ability to care for the minor is at issue, or where it is alleged that the physical, mental or emotional condition of the person is a factor in the alleged neglect, abuse or dependency of the minor.
Utah R. Juv. P. 33(a)(2) (emphases added). The plain language of rule 33 allows the juvenile court to order an evaluation of Mother if (1) Mother's ability to care for the Children was at issue or (2) Mother's mental condition contributed to the neglect, abuse, or dependency of the Children. See id. See generally Cox v. Krammer, 2003 UT App 264, ¶ 10, 76 P.3d 184 ("When interpreting court rules, we apply our rules of statutory construction...."); Brinkerhoff v. Brinkerhoff, 945 P.2d 113, 116 (Utah Ct.App.1997) ("We will interpret a statute according to its plain language ...." (internal quotation marks omitted)).
¶ 25 Father again claims that his concerns about Mother's health and fitness relate to the question of whether termination is in the *1065 best interests of the Children. As we have previously discussed, the termination proceedings were limited to Father's fitness. Further, the termination of Father's parental rights was based on two grounds: Father's attempts to have Mother killed and Father's abandonment of the Children. Mother's mental health could not have contributed to either of these grounds for a finding of neglect, abuse, or dependency. Therefore, we affirm the juvenile court's refusal to appoint a mental health therapist to evaluate Mother.

IV. Due Process
¶ 26 Father contends that he was deprived of his due process rights when the juvenile court granted Mother's motion to conceal her address[9] and denied Father's various attempts to obtain information through discovery and cross-examination. In particular, Father claims that the juvenile court's actions precluded him from engaging in any meaningful discovery, which resulted in a denial of his rights to cross-examine witnesses, present evidence and witnesses on his behalf, and to prepare for trial. See generally In re J.B., 2002 UT App 268, ¶ 8, 53 P.3d 968 ("Due process includes, among other things, the opportunity to submit evidence, examine and cross examine witnesses.").
¶ 27 In this case, Father has been convicted of conspiracy to commit aggravated murder of Mother. The facts underlying Father's conviction are that he hired third parties to murder Mother in her home. Accordingly, Mother has good reasons for wanting to keep her home address secret from Father. Under these circumstances, the juvenile court did not exceed its broad discretion in permitting Mother to withhold her current address from Father. See In re Pendleton, 2000 UT 77, ¶ 38, 11 P.3d 284 (noting that trial courts have "broad discretion in dealing with ... protective orders"); see also Utah R. Civ. P. 26(c) (allowing discovery protective orders for good cause).
¶ 28 Furthermore, we fail to see how the order detrimentally affected Father's ability to conduct discovery. Father knew Mother was represented by counsel and had access to that counsel's address.[10] Indeed, Father served Mother with interrogatories and requests for production of documents, and he noticed and took Mother's deposition. Father could also have subpoenaed relevant information from third parties or made a motion to the court for additional discovery. Father did not avail himself of these opportunities.
¶ 29 We have already affirmed the juvenile court's evidentiary and discovery rulings upon which Father bases his due process claim. We also conclude that Father was not impeded in his trial preparation by the lack of Mother's address. Therefore, we reject Father's argument that his due process rights have been violated.

V. Sufficiency of the Evidence
¶ 30 Finally, Father claims that Mother failed to prove by clear and convincing evidence that termination of his parental rights was in the best interests of the Children. See generally Utah Code Ann. § 78A-6-506(3) (2008) (stating that the burden of showing, by clear and convincing evidence, that parental rights should be terminated is on the party seeking termination); In re R.A.J., 1999 UT App 329, ¶ 7, 991 P.2d 1118 (same). Consequently, we now consider whether the record supports the juvenile court's conclusions regarding the Children's best interests and welfare.[11]
*1066 ¶ 31 Father argues that the finding that the Children's financial needs were being met by Mother and Stepfather is unsupported by the evidence. We disagree. The juvenile court heard testimony from both Mother and Father that Father sent just thirteen partial child support payments of $15 to $30 per monthdespite a child support obligation of $464 per monthover the past forty-seven months. Mother further testified that the loss of Father's support payments would not impact the Children's health or welfare. Mother explained that Stepfather contributes to the Children's financial support through his full-time employment and that she also works part-time. The evidence was sufficient to support the juvenile court's conclusion on this point.
¶ 32 Father additionally contends that the juvenile court could not make a finding that the Children's lives would be improved by the termination of his rights. The juvenile court heard testimony from Mother that the Children are doing well in their new schools, have made close friends, and are having their medical and emotional needs attended to by Mother and Stepfather. Mother also testified that the Children are angry with and afraid of Father based on Father's attempts to have their Mother killed. Mother further testified that an ongoing relationship with Father will foster guilt and create stress in the Children's lives. The court then balanced that evidence with testimony from Father about his and his parents' close relationship with the Children prior to Father's attempts to murder Mother. In doing so, the juvenile court carefully avoided consideration of Father's failure to exercise parent-time for over three years because such activity was prohibited by the protective order.
¶ 33 Essentially, Father asks us to reweigh the evidence presented in the juvenile court and to disregard Mother's testimony entirely. However, the juvenile court's "training, expertise, and superior ability to assess the credibility of parties ... [puts it] in the best position to make such a difficult determination" regarding termination of parental rights. In re T.M., 2006 UT App 435, ¶ 21, 147 P.3d 529 (concluding that the juvenile court's finding that termination was in the children's best interest was not clearly erroneous despite evidence against termination). Because we do not conclude that the juvenile court's findings, supporting its determination that termination of Father's parental rights is in the Children's best interests, are against the clear weight of the evidence, see In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435, we affirm.

CONCLUSION
¶ 34 Utah retained subject matter jurisdiction over this matter. With respect to Father's constitutional, evidentiary, and procedural arguments, the juvenile court's order is affirmed because Mother's fitness was not at issue, the juvenile court had discretion to enter the protective orders and quash the subpoenas, and the evidence was sufficient to support the termination of Father's parental rights.
¶ 35 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and WILLIAM A. THORNE JR., Associate Presiding Judge.
NOTES
[1] The UCCJEA was renumbered in 2008. See Utah Code Ann. § 78B-13-101 amendment notes (2008). Because there were no substantive revisions to the sections relevant to this opinion, we refer to the current version of the code throughout the rest of this decision.
[2] "Child custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or parent-time with respect to a child. The term includes a permanent, temporary, initial, and modification order." Id. § 78B-13-102(3); see also In re P.F.B., 2008 UT App 271, ¶¶ 1, 14, 191 P.3d 49 (applying the UCCJEA to consider jurisdiction in parental termination case); In re A.M.S., 2000 UT App 182, ¶ 5 n. 1, 4 P.3d 95 (noting that the UCCJEA applies to proceedings to terminate parental rights).
[3] At oral argument, the GAL began with the proposition that "so long as Utah is the issuing state, so long as one of the parties live[s] in Utah, case closed."
[4] Although the juvenile court did not make specific findings on the factors in section 78B-13-202(1)(a), we may rely on the record where the evidence is undisputed. See In re P.F.B., 2008 UT App 271, ¶ 15, 191 P.3d 49. While the trial court should make findings of fact and conclusions of law when the threshold question of its jurisdiction is challenged, the juvenile court's failure to do so here is not surprising. Father focused his arguments in the juvenile court on whether Utah was the Children's home state, and Mother argued that Utah retains jurisdiction because Father still lives in this state. The GAL made two jurisdictional arguments in the juvenile court. The first was based upon the Utah statute guiding forum choices within Utah while the second addressed personal jurisdiction. None of the parties argued that subsection (1)(a) of Utah Code section 78B-13-202 was determinative of the jurisdictional question.
[5] Because we conclude that there is substantial evidence in Utah concerning the Children's "care, protection, training, and personal relationships," Utah Code Ann. § 78B-13-202(1)(a) (2008), we need not address the alternative factor under subsection (1)(a), which considers whether the Children continue to have a significant connection to this state, see id.
[6] The Utah Rules of Civil Procedure are applicable to termination proceedings in the juvenile court. See Utah Code Ann. § 78A-6-506(3) (2008) (stating that parental termination proceedings are civil in nature and the Utah Rules of Civil Procedure govern); Utah R. Juv. P. 2(a) ("When the proceeding involves ... permanent deprivation of parental rights ..., the Utah Rules of Civil Procedure shall apply unless inconsistent with these rules.").
[7] The juvenile court also granted Mother's motion to quash because the information sought was privileged. Father argues that the privilege was waived because Mother put her health into issue by requiring the court to consider the Children's best interests. For the same reasons addressed in the body of this opinion, we conclude that Mother's fitness was never at issue and, thus, no waiver occurred.
[8] Father also challenges certain evidentiary rulings, which precluded him from asking questions related to Mother's parental fitness and also prevented him from inquiring into the fitness of Mother's current husband (Stepfather). Because Stepfather had not placed his fitness in issue by filing a petition to adopt the Children and because Father did not file a cross-petition challenging Mother's fitness, we agree with the trial court that the testimony sought was irrelevant and affirm the evidentiary rulings.
[9] Father also argues that the motion to conceal Mother's address was improperly granted because Mother did not supplement her motion with a memorandum as required by rule 7(c)(1) of the Utah Rules of Civil Procedure. See Utah R. Civ. P. 7(c)(1). Because Father failed to preserve this issue and did not argue an exception to the preservation requirement, we need not consider it. See H.U.F. v. W.P.W., 2009 UT 10, ¶ 25, 203 P.3d 943 ("We will not address an issue if it is not preserved....").
[10] In fact, Father's counsel agreed to the concealment of Mother's address and indicated that counsel was aware that he could make deposition and other discovery requests through Mother's attorney.
[11] Father does not challenge the juvenile court's findings of unfitness and abandonment.